The Honorable Paul B. Snyder
Chapter 11
Hearing Date: Friday, June 11, 2010
Hearing Time: 10:30 a.m.

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| In re<br><br>WASHINGTON MUTUAL, INC.,<br><br>    Debtor. | Case No. 08-12229-MFW<br>District of Delaware<br><br>Chapter 11 |
| ESOPUS CREEK VALUE LP and<br>MICHAEL WILLINGHAM<br><br>    Plaintiffs,<br><br>vs.<br><br>WASHINGTON MUTUAL, INC.,<br><br>    Defendant. | Adversary No. 10-04136<br><br>DECLARATION OF WILLIAM C. RAVA IN SUPPORT OF WASHINGTON MUTUAL, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND OR, IN THE ALTERNATIVE, TRANSFER FOR HEARING ON REMAND |

I, William C. Rava, declare under 28 U.S.C. § 1746:

1. I am an attorney duly admitted to practice law in the State of Washington and before this Court and a partner at Perkins Coie LLP, attorneys for Defendant Washington Mutual, Inc. ("WMI"). I submit this declaration in support of WMI's Opposition to Plaintiffs' Motion to Remand or, in the Alternative, Transfer for Hearing on Remand, based upon my personal knowledge, unless otherwise stated herein.

RAVA OPPOSITION DECLARATION – 1

53000-0005/LEGAL18440820.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

2. Attached hereto as Exhibit A is a true and correct copy of the April 26, 2010 Order from the Delaware Bankruptcy Court.

3. Attached hereto as Exhibit B are true and correct copies of pages 7 through 9 (plus the first and signature pages), of WMI and WMI Investment Corp.'s Disclosure Statement for the Second Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

DATED: June 4, 2010 in Seattle, Washington.

                  */s/ William C. Rava*
                  William C. Rava, WSBA No. 29948

RAVA OPPOSITION DECLARATION – 2

53000-0005/LEGAL18440820.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**EXHIBIT A**
(see attached)

RAVA OPPOSITION DECLARATION – 3

53000-0005/LEGAL18440820.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
                                                         :
*In re:*                                                 :   **Chapter 11**
                                                         :
WASHINGTON MUTUAL, INC., et al.,                         :   Case No. 08-12229 (MFW)
                                                         :   (Jointly Administered)
                **Debtors.**  :
                                                         :   Related Dkt. No. 2501
---------------------------------------------------------x
---------------------------------------------------------x
OFFICIAL COMMITTEE OF                                    :
EQUITY SECURITY HOLDERS,                                 :   Adv. Proc. No. 10-50731(MFW)
                                                         :
**Plaintiff,**                                           :
                                                         :
v.                                                       :   Related Dkt. No. 3/19
WASHINGTON MUTUAL, INC.,                                 :
                                                         :
**Defendant,**                                           :
                                                         :
---------------------------------------------------------x

## **ORDER**

Upon the motion, dated March 11, 2010 (the "Motion"), of the Official Committee of Equity Security Holders (the "Equity Committee"), the plaintiff herein, for an order granting summary judgment, or in the alternative, for relief from the automatic stay, and a memorandum of law in support thereof; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the relief granted herein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and Washington Mutual, Inc. ("WMI"), the defendant herein, having (1) answered the complaint herein and filed a counterclaim (the "Counterclaim") with respect thereto, and (2) interposed an opposition to the Motion and the relief requested therein (the "Opposition"); and the Equity

Committee having filed a reply to the Opposition (the "Reply"); and the Court having scheduled a hearing for April 21, 2010 (the "Hearing") to consider solely the issue of the applicability of the automatic stay imposed by operation of section 362 of title 11 of the United States Code (the "Bankruptcy Code"); and the Court having duly considered the relevant portions of the Motion, the Opposition and the Reply, and the testimony and the arguments presented at the Hearing; and the Court having determined that section 362 of the Bankruptcy Code is inapplicable to the relief requested in the Motion; upon due deliberation, good and sufficient cause appearing therefore, it is hereby **ORDERED** that:

1. The automatic stay imposed by operation of section 362 of the Bankruptcy Code is inapplicable to an action by any one or more shareholders of WMI including, without limitation, members of the Equity Committee, in the state courts of the State of Washington seeking to compel WMI to hold an annual shareholders meeting and any relief related to such action; provided, however, that the foregoing is without prejudice to the rights of WMI to contest the relief requested in any such action and in any such court.

2. The relief granted herein does not affect, nor is it intended to affect, the rights of WMI with respect to the Counterclaim and the Equity Committee to oppose the relief requested in the Counterclaim.

3. The Court retains jurisdiction to enter further orders as necessary to accomplish the purposes of this Order.

Dated: Wilmington, Delaware
April 26, 2010

_____
The Honorable Mary F. Walrath
United States Bankruptcy Court Judge

**EXHIBIT B**
(see attached)

RAVA OPPOSITION DECLARATION – 4

53000-0005/LEGAL18440820.1

THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

------------------------------------------------------------x
: 
In re : Chapter 11
: 
WASHINGTON MUTUAL, INC., et al.,[1] : 
: Case No. 08-12229 (MFW)
: 
Debtors. : (Jointly Administered)
: 
: 
------------------------------------------------------------x

DISCLOSURE STATEMENT FOR THE SECOND AMENDED JOINT
PLAN OF AFFILIATED DEBTORS PURSUANT TO
CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

-and-

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700

Attorneys for Debtors
and Debtors in Possession

Dated: May 21, 2010

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 925 Fourth Avenue, Suite 2500, Seattle, Washington 98104.

exercise its purported contractual right, pursuant to the Purchase and Assumption Agreement, to direct JPMC to transfer the funds on deposit in the Disputed Accounts to the FDIC Receiver (the Bankruptcy Court permitted the FDIC Receiver to intervene in the Turnover Action as a defendant) (the "FDIC Stay Relief Motion"). The FDIC Receiver argued that stay relief was necessary to protect its right to set off the funds in the Disputed Accounts against its claims against the Debtors. The Debtors have vigorously opposed the FDIC Stay Relief Motion.

JPMC filed a motion to dismiss the Turnover Action, or, in the alternative to consolidate the Turnover Action with the JPMC Adversary Proceeding, which motion was opposed by the Debtors and denied by the Bankruptcy Court.

On May 19, 2009, the Debtors filed a motion for summary judgment in the Turnover Action, which motion was contested by JPMC, the FDIC Receiver and the Bank Bondholders (as intervenors in the Turnover Action). The briefs in opposition to the Debtors' summary judgment motion, filed by JPMC, the FDIC Receiver, and the Bank Bondholders, totaled over 2,000 pages inclusive of all exhibits, declarations and affidavits. The Debtors' summary judgment motion and the oppositions thereto were considered at a hearing before the Bankruptcy Court on October 22, 2009, and the matter is *sub judice*.

### C. The Global Settlement

On March 26, 2010, the Debtors filed a proposed plan of reorganization under chapter 11 of the Bankruptcy Code, which was amended on May 16, 2010. On May 21, 2010, the Debtors filed the Second Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code. As originally filed, the Debtors' plan of reorganization embodied a proposed global settlement agreement which proposed a compromise and settlement of the numerous disputes among the Debtors, JPMC, the FDIC Receiver, and the FDIC Corporate, including, among others, the treatment of the Disputed Accounts, the division of the Tax Refunds, and the ownership of the Trust Preferred Securities. The global settlement agreement, as proposed on March 26, 2010, was consistent with the terms agreed upon and read into the record at a hearing before the Bankruptcy Court on March 12, 2010 and the basis of a request by the FDIC Receiver, JPMC, and the Debtors to request a stay of certain appellate proceedings pending before the United States District Court for the District of Delaware. As of March 26, 2010, the material provisions of the proposed global settlement agreement had been agreed to by WMI, JPMC and certain significant creditor groups, but the FDIC Receiver and FDIC Corporate had not agreed to all provisions contained therein. Thereafter, the FDIC's board of directors disapproved the proposed global settlement agreement. Notwithstanding this determination, the FDIC Receiver and the FDIC Corporate continued negotiating in an effort to resolve material open issues and reach a definitive agreement.

Ongoing negotiations have resulted in a revised global settlement agreement (the "Global Settlement Agreement"), an executed copy of which is attached to the Plan, which Global Settlement Agreement embodies a compromise and settlement of the numerous disputes among WMI, JPMC, the FDIC Receiver, and FDIC Corporate, as well as significant creditor groups. Furthermore, the FDIC's board of directors has approved the Global Settlement Agreement. Among other things, the Global Settlement Agreement settles disputes regarding the treatment of the Disputed Accounts, the division of the Tax Refunds and the ownership of the Trust Preferred Securities.

After numerous months of litigation and careful analysis of the merits of their claims and the claims asserted against them by JPMC, the FDIC Receiver, and FDIC Corporate, among others, the Debtors have concluded that, because of the substantial expense of litigating the issues associated with their claims, the length of time necessary to resolve each of the issues presented in the pending litigation,

the complexity and uncertainty involved and the corresponding disruption to their efforts to make distributions for the benefit of their creditors, it is in their best interests, and the best interests of their stakeholders, to resolve their disputes with JPMC, the FDIC Receiver, and FDIC Corporate, and related matters on the terms set forth in the Global Settlement Agreement, by and among (i) WMI, (ii) WMI Investment, (iii) JPMC, collectively with those of JPMC's affiliates that have filed proofs of claim against the Debtors and the Debtors' chapter 11 estates or that are former subsidiaries of WMB acquired by JPMC pursuant to the Purchase and Assumption Agreement (collectively, the "JPMC Entities"), (iv) the FDIC Receiver and FDIC Corporate, (v) Appaloosa Management L.P. ("Appaloosa"), on behalf of Appaloosa Investment L.P. I, Palomino Fund Ltd., Thoroughbred Fund, L.P., and Thoroughbred Master Ltd. (collectively, and with Appaloosa, the "Appaloosa Parties"), (vi) Centerbridge Partners, L.P. ("Centerbridge"), on behalf of Centerbridge Credit Advisors, LLC and Centerbridge Special Credit Advisors, LLC (collectively, and with Centerbridge, the "Centerbridge Parties"), (vii) Owl Creek Asset Management, L.P. ("Owl Creek"), on behalf of Owl Creek I, L.P., Owl Creek II, L.P., Owl Creek Overseas Fund, Ltd., Owl Creek Socially Responsible Investment Fund, Ltd., Owl Creek Asia I, L.P., Owl Creek Asia II, L.P., and Owl Creek Asia Master Fund, Ltd. (collectively, and with Owl Creek, the "Owl Creek Parties"), (viii) Aurelius Capital Management, LP ("Aurelius"), on behalf of Aurelius Capital Partners, LP and Aurelius Investment, LLC and other managed fund entities (collectively, and with Aurelius, the "Aurelius Parties") (Appaloosa, Centerbridge, the Owl Creek Parties and Aurelius, collectively, the "Settlement Note Holders") and (ix) the Creditors' Committee.

Contemporaneously herewith, the Debtors have filed the Plan, which is premised upon the Bankruptcy Court's approval of the Global Settlement Agreement.

As discussed further herein and in the Plan, pursuant to sections 363, 365, 1123(a)(5) and 1123(b)(3) of the Bankruptcy Code and Rule 9019 of the Federal Bankruptcy Rules (the "Bankruptcy Rules"), the Plan incorporates, and is expressly conditioned upon the approval and effectiveness of, the sale of the Debtors' rights and interests in certain of the Plan Contribution Assets (as set forth in the Global Settlement Agreement) free and clear of all liens, claims and encumbrances, and the compromises, settlements and releases of claims embodied in the Global Settlement Agreement, and is subject to the occurrence of the effective date of that agreement.

Pursuant to the terms of the Global Settlement Agreement, the Debtors, JPMC, the FDIC Receiver and FDIC Corporate, the Settlement Note Holders and the Creditors' Committee have agreed to compromise, settle and release, as to the parties thereto, certain issues in dispute including, but not limited to, the issues disputed in (i) the D.C. Action, (ii) the JPMC Adversary Proceeding, (iii) the Turnover Action, (iv) the discovery authorized by the Bankruptcy Court and conducted by the Debtors pursuant to Bankruptcy Rule 2004 to facilitate the Debtors' inquiry into the existence of potential additional claims and causes of action of the Debtors and the Debtors' chapter 11 estates against JPMC, (v) the proof of claim filed by the Debtors and each of WMI's direct and indirect non-banking subsidiaries with the FDIC Receiver, (vi) proofs of claim filed by the JPMC Entities against the Debtors and the Debtors' estates (the "JPMC Claims"), (vii) the motions by the FDIC Receiver and JPMC to stay or dismiss the Turnover Action and the JPMC Adversary Proceeding in favor of proceedings before the United States District Court for the District of Columbia in the D.C. Action and the appeals therefrom, (viii) the proof of claim filed by the FDIC against the Debtors and the Debtors' estates in an unliquidated amount (the "FDIC Claim"), (ix) the asserted transfer of the Trust Preferred Securities and the consequent issuance of the REIT Series, and (x) certain other disputed assets and liabilities.

The Global Settlement Agreement proposes a resolution of the parties' disputes and the concomitant risks and incurrence of litigation-related expenses. The Debtors, in the exercise of their business judgment, have determined that the benefits of settling with the JPMC Entities, the FDIC

Receiver, FDIC Corporate, and the other parties to the Global Settlement Agreement far outweigh any gains likely to be achieved by continuing litigation with such parties, particularly in light of the expense of litigation and the risks and uncertainties associated therewith.

The Global Settlement Agreement is in the best interests of the estates because it will result in the repayment of cash from JPMC in excess of approximately $4 billion, representing nearly all of the funds in the Disputed Accounts. Pursuant to the Plan and the Global Settlement Agreement, such funds will be available for distribution to holders of allowed claims against the Debtors' estates rather than being tied up in risky, uncertain litigation or subject to the asserted setoff rights of JPMC or the FDIC Receiver. In addition, pursuant to the Global Settlement Agreement, the parties thereto have agreed to a favorable allocation of the Tax Refunds, the ownership of which has been disputed by the Debtors, JPMC, the FDIC Receiver, and FDIC Corporate. As the Tax Refunds become available, the Debtors' estates will receive their share of such Tax Refunds. The Debtors currently estimate that their share of the total estimated Tax Refunds of $5.5 to $5.8 billion will be approximately $2.365 to $2.425 billion, inclusive of any distribution that may be payable on account of Non-Subordinated Bank Bondholder Claims (as described below and in the Plan).

In addition to other valuable assets to be received by the Debtors pursuant to the Global Settlement Agreement, consummation of the transactions contemplated therein also will result in the elimination of significant liabilities and claims against the Debtors which, to the extent allowed, would otherwise result in a pro rata decrease in any distributions to the Debtors' other stakeholders. In light of this substantial consideration and the immediate relief from uncertain, expensive and protracted litigation, the Debtors believe that the Global Settlement Agreement is fair, reasonable, and in the best interests of the Debtors and their estates and creditors. The following describes certain of the principal provisions of the Global Settlement Agreement, including the resolution of disputes relating to the Disputed Accounts and the Tax Refunds, as well as JPMC's agreement to assume significant liabilities and claims asserted against the Debtors' estates.[3]

### 1. Treatment of The Disputed Accounts.

In partial consideration for the assets sold pursuant to the Global Settlement Agreement and the releases and other benefits provided to the Released Parties pursuant to the Plan, the JPMC Entities, the FDIC Receiver and FDIC Corporate will (i) waive any and all claims, rights and liabilities with respect to the WMI Accounts and the Disputed Accounts, and (ii) take such actions, if any, as may be reasonably requested by WMI, including, without limitation, filing with the Bankruptcy Court such notices or pleadings setting forth the waiver of any and all interests in the WMI Accounts and the Disputed Accounts. The FDIC Receiver and FDIC Corporate will waive and release any and all interest in and any and all rights to seize or set off against the WMI Accounts and the Disputed Accounts and any funds contained therein in accordance with Section 9.5 of the Purchase and Assumption Agreement including, without limitation, by withdrawing with prejudice the FDIC Stay Relief Motion. JPMC will pay to WMI or such other of the WMI Entities as WMI will designate, the amounts contained in the Disputed Accounts and the WMI Accounts as of the effective date of the Global Settlement Agreement, net of eighty percent (80%) of the amounts received by WMI during the period from the Petition Date up to and including the date of the Global Settlement Agreement attributable to refunds of taxes deposited in the Disputed Accounts and the WMI Accounts (including the interest component of any such refunds and

---

[3] To the extent that there is a discrepancy between the summary of the Global Settlement Agreement contained herein and the Global Settlement Agreement, the terms of the Global Settlement Agreement shall control.

## XIII. CONCLUSION

The Debtors believe the Plan is in the best interests of all creditors and urge the holders of impaired Claims in Class 2 (Senior Notes Claims), Class 3 (Senior Subordinated Notes Claims), Class 12 (General Unsecured Claims), Class 14 (CCB-1 Guarantees Claims), Class 15 (CCB-2 Guarantees Claims), and Class 16 (PIERS Claims), Class 17 (Non-Subordinated Bank Bondholder Claims), Class 18 (Subordinated Claims), Class 19 (REIT Claims), and Class 20 (Preferred Equity Interests) to vote to accept the Plan.

Dated: New York, New York
       May 21, 2010

Respectfully submitted,

WASHINGTON MUTUAL, INC.

By: _____
    Name:  William C. Kosturos
    Title: Chief Restructuring Officer


WMI INVESTMENT CORP.

By: _____
    Name:  William C. Kosturos
    Title: President & Chief Executive Officer