|   |   |
|---|---|
|   | Judge: Paul B. Snyder |
|   | Chapter 11 |
|   | Hearing Date: Friday, June 11, 2010 |
|   | Hearing Time: 10:30 A.M. |
|   | Response Date: Friday, June 4, 2010 |

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON
# TACOMA

| | |
|---|---|
| In Re<br><br>WASHINGTON MUTUAL, INC.,<br><br>Debtor. | Case No. 08-12229-MFW<br>District of Delaware<br>Chapter 11 |
| MICHAEL WILLINGHAM and ESOPUS CREEK VALUE LP,<br><br>Plaintiffs,<br><br>vs.<br><br>WASHINGTON MUTUAL, INC., a Washington corporation,<br><br>Defendant. | Adversary No. 10-04136<br><br>**SUPPLEMENTAL DECLARATION OF COLIN FOLAWN IN SUPPORT OF MOTION TO REMAND, OR IN THE ALTERNATIVE TRANSFER FOR HEARING ON REMAND** |

I, COLIN FOLAWN, hereby certify and declare under penalty of perjury as follows:

1. I am an attorney of record for Plaintiffs Michael Willingham and Esopus Creek Value, LP in the above-entitled matter. I have personal knowledge of the facts set forth herein and am otherwise competent to testify.

2. Attached as Exhibit A is a true and correct copy of excerpts from "Opposition of Defendant Washington Mutual, Inc.[,] to Plaintiff's Motion for Summary Judgment, or in the Alternative, for Relief from the Automatic Stay," including the cover page and pages 24–30.

/ / /

/ / /

SUPPLEMENTAL DECLARATION OF COLIN FOLAWN IN SUPPORT OF MOTION TO REMAND, OR IN THE ALTERNATIVE TRANSFER FOR HEARING ON
PDX/121991/175276/CJF/6080145.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101-4010
Telephone 206.622.1711 Fax 206.292.0460

1     I hereby declare under penalty of perjury that the foregoing is true and correct to the
2 best of my knowledge and belief.
3     Dated this 8th day of June, 2010.

By: _____
    Colin Folawn

SUPPLEMENTAL DECLARATION OF COLIN FOLAWN
IN SUPPORT OF MOTION TO REMAND, OR IN THE
ALTERNATIVE TRANSFER FOR HEARING ON
PDX/121991/175276/CJF/6080145.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101-4010
Telephone 206.622.1711 Fax 206.292.0460

EXHIBIT A

HEARING DATE: April 21, 2010 at 11:30 AM

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| WASHINGTON MUTUAL, INC., et al.[1] | Case No. 08-12229 (MFW) |
| Debtors. | Jointly Administered |
| OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS, | Adversary Proceeding No. 10-50731 (MFW) |
| Plaintiff | |
| - against - | |
| WASHINGTON MUTUAL, INC., | |
| Defendant | |

## OPPOSITION OF DEFENDANT WASHINGTON MUTUAL, INC. TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY

---

[1] The Debtors in these Chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395). The Debtors are located at 925 Fourth Avenue, Suite 2500, Seattle, Washington 98104.

RLF1 3557711v.2

In short, there is simply no legal support for the dramatic cost-shifting of an insurgent proxy contest that the Equity Committee demands. After trial, if the Equity Committee is successful in replacing WMI's board, it will always be able to file an application to this Court to have its expenses allowed as administrative claims pursuant to section 503(b)(3)(D) of the Bankruptcy Code. Particularly given the fact that shareholders are out of the money, the estates should not be forced to include the Equity Committee's slate on their proxy and should not be forced to bear the costs of the Equity Committee's proxy campaign. For this reason, too, the relief requested in the Motion should be denied.[23]

### D. Plaintiff's Request for Alternative Relief is Improper, the Automatic Stay Applies, and, In Any Event, the Court Should Stay this Action

#### 1. *The Equity Committee's Request for a Ruling on the Applicability of the Automatic Stay Should Be Denied As An Improper Request for an Advisory Opinion*

Although it commenced this Action, the Equity Committee has alternatively asked this court, "to determine the automatic stay is not applicable or grant relief from the automatic stay to commence an action in Washington State court." (Pl. Memo. at 1). Having filed its Motion requesting summary judgment here, this Court has a "virtually unflagging obligation" to exercise

---

shareholder proposal 'if the proposal related to ... an election for membership on the company's board of directors or analogous governing body.'").

[23] Again without briefing or discussion, the Equity Committee has asked the Court to alter the quorum requirement for taking action at a shareholder meeting as defined in WMI's Bylaws to "direct that the votes represented at the meeting constitute a quorum." Proposed Order at 2.f.[1] Quorums are generally altered if there is concern that a large shareholder may frustrate a shareholder meeting by refusing to attend. *See* Model Business Corporations Act, section 7.03, Official Comment No. 4 (2005) (reasoning that quorum altering is designed to "prevent[] a holder of the majority of the votes (who may not desire that a meeting be held) from frustrating the court-ordered meeting by not attending to prevent the existence of a quorum."). The Equity Committee has stated no such cause. Rather, by pursuing this requested relief, the Equity Committee seeks to effectively empower itself with the power to unilaterally direct the Debtors' course. Such a concentration of power is inappropriate and beyond the contemplation of the U.S. Trustee or this Court in refusing to disband the Equity Committee. Waiver of quorum is therefore neither necessary or appropriate, and the request should be denied.

the jurisdiction given it. *Colo. River Water Conservation Dist. v United States*, 424 U.S. 800, 817 (U.S. 1976). The Equity Committee's request for stay relief is made in the alternative – there is no real case or controversy for the Court to resolve prior to ruling on summary judgment. Evincing the fact that it's request for a ruling on the automatic stay is not ripe, the Equity Committee's "briefing" is limited to one sentence found in the introductory and conclusion paragraphs of its brief, asserting in conclusory fashion that, "[i]n the alternative, the Court should determine that the automatic stay does not apply or grant relief from the automatic stay such that Plaintiffs may seek such relief in Washington." (Pl. Mem. at 8). This is an improper request for an advisory opinion that should be rejected. *Armstrong World Indus., Inc v. Adams*, 961 F.2d 405, 410 (3d Cir. 1992) ("The ripeness doctrine stems from the requirements of Article III of the U.S. Constitution, which prohibits federal courts from issuing advisory opinions.").

2. *The Automatic Stay Applies and the Equity Committee Has Failed to Show Cause For Relief Therefrom*

The automatic stay offers debtors a "breathing spell" by stopping *all actions* asserted against them, permitting debtors the time and resources necessary to formulate a plan for reorganization or rehabilitation, and repayment of creditors. *See McCartney v. Integra National Bank North*, 106 F.3d 506, 509 (3d Cir. 1997). The plain text of section 362(a)(3) provides for the automatic stay of "any act ... to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Here, the Equity Committee seeks to replace the Debtors' board of directors in order to garner "control" and dominion over the management of *all* the estates' assets. Thus, the plain language of the automatic stay instructs that the Equity Committee's action is indeed stayed. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

Courts have found that attempts by stakeholders to exercise their rights to elect directors to a debtor in possession's board constitute attempts "to exercise control over property of the

estate." *See, e.g., In re Fairmont Communications Corp.*, No. 92-B-44861 (slip op.) (Bankr. S.D.N.Y. Mar. 3, 1993); *In re Bicoastal Corp.*, 1989 Bankr. LEXIS 2046 (Bankr. M.D. Fla. 1989). Although these decisions are based in part upon the shareholders' joint status as creditors, the language of the statute does not call for an assessment of what the "act ... to exercise control over property of the estate" arises out of or for what it is motivated. Rather, the Bankruptcy Code stays automatically "*any* act" and applies to "*all* entities." 11 U.S.C. § 362(a)(3) (emphasis added).[24]

Assuming *arguendo* the automatic stay applies, the Equity Committee does not make a single argument in support of its request to lift the automatic stay and thus, by definition, falls far short of establishing "cause." 11 U.S.C. § 362(d)(1). As discussed above, the Equity Committee's "briefing" is limited to one conclusory sentence in its brief. It cannot be said that the Equity Committee has satisfied its "heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief." *In re W.R. Grace & Co.*, 2007 WL 1129170, at *2 (Bankr. D. Del. Apr. 13, 2007) (the party seeking relief from automatic stay bears the burden). Failure by the Equity Committee to carry its burden alone

---

[24] In *In re Marvel Entertainment Group, Inc.*, 209 B.R. 832 (D. Del. 1997), a decision that is not binding authority on this Court, the court found that "the automatic stay provisions of the Bankruptcy Code are not implicated by the exercise of shareholders' corporate governance rights." *Id.* at 838. However, the key "exercise control" language of section 362(a)(3) was not in the Bankruptcy Code until it was added by the 1984 Amendment to the Bankruptcy Code. *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, § 441(a)(2), 98 Stat. 333 (1984). As a result, this language was not applicable in *any* of the cases cited by *Marvel*, including *Manville*, 801 F.2d at 60. Thus, *Marvel's* finding was based entirely upon cases that had not considered the Bankruptcy Code as currently effective *Marvel* did conclude that the "exercise control" language was inapplicable based upon its assessment of legislative intent, determining that "if Congress had intended such a marked departure from well-established law, the legislative history of the 1984 amendment would contain some indication of that intention." *Marvel*, 209 B.R. at 838. However, the Supreme Court has stated that "statutory interpretation begins with the language of the statute itself," *Pennsylvania Dep't of Pub Welfare v Davenport*, 495 U.S. 552, 557-58 (1990), and "time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Germain*, 503 U.S. at 253-54.

"requires a denial of the requested relief." *Id.*; *see also, e.g., In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990) ("If the movant fails to make an initial showing of cause... the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.").

The Equity Committee has waived any argument that it may show cause for stay-relief. "A moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief." *See International Raw Materials, Ltd. v. Stauffer Chem. Co.*, 978 F.2d 1318, 1327 n. 11 (3d Cir. 1992) (refusing to consider an issue raised for the first time in a reply brief); *see also Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 204-05 n. 29 (3d Cir. 1990). The stay should remain in full force and effect and the Action should not proceed.

### 3. *If Inapplicable, the Automatic Stay Should be Extended Pursuant to the Exercise of this Court's Equitable Powers*

Even if this Court were to find that the automatic stay were not applicable in the first instance, it should extend the stay using its power under section 105 of the Bankruptcy Code and enjoin further prosecution of this Action in any forum. The Third Circuit has endorsed the extension of the automatic stay where such litigation "could interfere with the reorganization of the debtor, or would interfere with, deplete or adversely affect property of the estates or which would frustrate the statutory scheme of chapter 11 or diminish the debtor's ability to formulate a plan of reorganization." *Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.)*, 115 Fed. Appx. 565, 570 (3d Cir. 2004) (*citing In re A. H. Robins Co.*, 828 F.2d 1023, 1026 (4th Cir. 1987) (staying action against debtor's insurer because action "will put a substantial burden on [the debtor and] it will detract from the reorganization process") and *Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville Corp.)*, 26 B.R. 420, 436 (Bankr. S.D.N.Y. 1983)

*vacated in part*, 41 B.R. 926 (S.D.N.Y. 1984) (extending the automatic stay under § 362 pursuant to § 105(a) against non-debtors)) (internal citation omitted).[25] While these grounds alone are sufficient to demand extension of the stay, the Debtors have a right to enhanced protection from the interference and distraction of outside litigation during the exclusivity period. *See In re I Burack, Inc.*, 132 B.R. 814, 817-818 (Bankr. S.D.N.Y. 1991) ("It is generally recognized that during the exclusivity period ... [a] claimholder should not be permitted to pursue litigation against the debtor in another court unless extraordinary circumstances are shown.") (internal citation omitted).

Moreover, the Third Circuit has held that the automatic stay may be extended where "unusual circumstances" exist, including where the action will have an adverse impact on the debtor's ability to accomplish reorganization. *See McCartney v. Integra Nat'l Bank North*, 106 F.3d 506, 509-10 (3d Cir. 1997). Here, for all the reasons adopted by the Third Circuit, there can be no question that unusual circumstances exist that justify extending the automatic stay. Beyond simply threatening to "interfere with the reorganization" of the Debtors, if the Action were allowed to proceed, the Equity Committee will seek to replace the Debtors' board of directors and almost certainly withdraw support of the Plan and Agreement, risking everything accomplished to date in the Chapter 11 Cases. The value that the Plan and Agreement provide to be recovered for the benefit of the Debtors' estates would be depleted and replaced with a "swing for the fences" litigation strategy that very likely will only further deplete value and delay distributions to creditors. At best, if the Action were to proceed, the Equity Committee would no doubt attempt to extract a recovery for shareholders, notwithstanding that creditors will not be

---

[25] *See also Belcufine v. Aloe*, 112 F.3d 633, 637 n.5 (3d Cir. 1997) (stating that the *Robbins* rationale for extending the automatic stay "has since been adopted by this Circuit").

paid in full, thus frustrating the statutory scheme of chapter 11. *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463 (3d Cir. 1998) provides a clear example of the adverse impact the Action threatens to impose on the Chapter 11 Cases. After certain bondholders foreclosed upon common stock and removed and replaced the Marvel board, the chapter 11 case spiraled out of control. There were ever-escalating litigations and disputes, and an overarching "lack of confidence all creditors had in the [new board's] ability to act as fiduciaries." *Id* at 473. Less than six months after the new board took control, the district court withdrew the reference and ordered the appointment of a chapter 11 trustee to replace the board, and the Third Circuit affirmed. *Id.* at 467-69, 478. It took the chapter 11 trustee another seven expensive months to stabilize Marvel and confirm a plan of reorganization. *See In re Marvel Entertainment Group*, 234 B.R. 21, 23 (D. Del. 1999).

Additionally, as of April 7, 2010, in its Answer to the Equity Committee's Complaint, the Debtors will have asserted a counterclaim, requesting that the Court enjoin further prosecution of this Action – in any forum – pursuant to its inherent power under section 105 of the Bankruptcy Code (the "Counterclaim"). Such authority has been exercised in similar circumstances in the past and is fully appropriate here. *See Trap Rock*, 138 B.R. at 424 (court enjoined prosecution of an action to compel a shareholder meeting in any forum other than in the bankruptcy court); *see also In re Phila. Newspapers, LLC*, 407 B.R. 606, 618 (E.D. Pa. 2009) (affirming bankruptcy court's grant of injunction enjoining suit against non-debtors); *Lane v. Phila. Newspapers, LLC (In re Phila. Newspapers, LLC)*, 2010 U.S. Dist. LEXIS 1881, *15 (E.D. Pa. Jan. 11, 2010) (same). In view of the fact that this Court will, presumably, adjudicate the Debtors' Counterclaim -- a core proceeding over which a Washington state court would have no

jurisdiction -- judicial economy alone precludes authorizing the Equity Committee to take up this Action in state court.

## CONCLUSION

For the reasons stated, the Motion should be denied.

Dated: April 7, 2010
       Wilmington, Delaware

/s/

Mark D. Collins (No. 2981)
Chun I. Jang (No. 4790)
Drew G. Sloan (No. 5069)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-- and --

Marcia L. Goldstein, Esq.
Brian S. Rosen, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007